**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARVIN WILLIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.:** |
| | ) | |
| **AMERICAN TIRE** | ) | **JURY DEMANDED** |
| **DISTRIBUTORS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

**COMES NOW** Plaintiff, Marvin Willis ("Plaintiff" or "Willis"), by and through his undersigned counsel of record, and files this Complaint against American Tire Distributors, Inc. ("ATD" or "Defendant"). As grounds for this Complaint, Plaintiff states the following:

**JURISDICTION AND VENUE**

1. This suit is authorized and brought to secure protection of and to redress the deprivation of rights secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," codified at 42 U.S.C. § 2000e et seq., as amended by the "Civil Rights Act of 1991," (hereinafter referred to collectively as "Title VII") and 42 U.S.C. §1981.

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3.     The unlawful employment practices described herein were committed in Clarke County, Alabama; therefore, venue lies in the United States District Court for the Southern District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     Plaintiff is a citizen of the United States of America over the age of nineteen (19) years, and currently resides in Clarke County, Alabama.

5.     Plaintiff was, at all times relevant to this Complaint, an "employee" of Defendant within the meaning of 42 U.S.C. § 2000e(f).

6.     Defendant is a corporation with a principal mailing address of P.O. Box 3145, Huntersville, North Carolina 28070-3145.

7.     During all times relevant to this Complaint, Defendant conducted business in Clarke County, Alabama.

8.     Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and was, at all times relevant, Plaintiff's "employer."

## ADMINISTRATIVE EXHAUSTION

9.     Plaintiff filed Charge of Discrimination number 420-2024-04375 (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant on or about August 13, 2024. (Attached hereto as **Exhibit A**).

2

10.    Plaintiff received the Right to Sue ("RTS") for the Charge on or about January 22, 2026. (Attached hereto as **Exhibit B**).

11.    Plaintiff has now filed this Complaint within ninety (90) days of his receipt of the RTS and has, therefore, exhausted all administrative remedies with respect to the Charge before filing his claims with this Court.

## FACTS

12.    Plaintiff is a Black man.

13.    Plaintiff was hired by Defendant on or about February 8, 2022, to work as a Phone Operator.

14.    Plaintiff worked remotely from Jackson, Alabama.

15.    Plaintiff reported to Trista Mattacchione ("Mattacchione").

16.    In April 2022, Mattacchione began subjecting Plaintiff to discrimination and harassment based on his race and sex.

17.    Plaintiff was not permitted to use all of the functioning tools available to assist his job duties.

18.    Mattacchione would call Plaintiff "killa," which is slang for a racial slur.

19.    Mattacchione would wish Plaintiff "hood night" instead of "good night."

3

20.     Mattacchione made numerous sexual innuendoes, such as telling Plaintiff to "suck a bag of dicks."

21.     Mattacchione subjected Plaintiff to homosexual images and slurs via Microsoft Teams messages, including referring to Plaintiff as "Marvin G. Willis," with the letter G representing the word "gay."

22.     Plaintiff reported Mattacchione's behavior to Human Resources ("HR") on multiple occasions between June 2023 and October 2023.

23.     Soon after Plaintiff began reporting the discrimination and harassment, Plaintiff started experiencing severe retaliation from his supervisor and coworkers.

24.     Mattacchione told Plaintiff's coworkers during a team meeting to be mindful of what they were sharing in Microsoft Teams chats because someone was "snitching."

25.     A group of around four (4) white men began threatening Plaintiff's life in Microsoft Teams chats, making it known that they knew Plaintiff had submitted complaints to HR.

26.     Plaintiff reported these death threats to HR, and coworkers continued to mock him for his report.

27.     In October 2023, Plaintiff was moved from Mattacchione's team to Shannon Brewster's ("Brewster") team.

4

28.     Plaintiff expressed his concerns with the reassignment to HR, as Mattacchione and Brewster were good friends, but HR disregarded these concerns.

29.     Shortly after Plaintiff's reassignment, he began experiencing retaliation from Brewster and her supervisor, Jessica McKowen ("McKowen").

30.     Brewster told Plaintiff that she had a process to "get the ball rolling" and that she had gotten a lot of employees terminated before.

31.     Brewster began falsifying Plaintiff's timesheets by reporting incorrect working hours.

32.     McKowen sent Plaintiff a harassing email that she claimed was on behalf of Mattacchione, who no longer worked for Defendant at the time the email was sent.

33.     Plaintiff reported this retaliation to HR on or around February 7, 2024.

34.     Plaintiff was terminated on or around March 20, 2024, only six (6) weeks after reporting retaliation to HR.

35.     Plaintiff has been significantly damaged both financially and emotionally due to Defendant's unlawful actions.

## COUNT I – RACE DISCRIMINATION (TITLE VII)

36.     Plaintiff is Black and he is, therefore, a member of a protected class.

37.     Plaintiff was employed by Defendant as a Phone Operator.

38.     Plaintiff is qualified to do his job as a Phone Operator.

39.    In the role of Phone Operator, Plaintiff's supervisor, Mattacchione, subjected Plaintiff to different standards and other racist comments that Caucasian employees were not subjected to.

40.    Plaintiff was not permitted to use all of the functioning tools available to assist his job duties.

41.    Mattacchione would call Plaintiff "killa," which is slang for a racial slur.

42.    Mattacchione would wish Plaintiff "hood night" instead of "good night."

43.    Plaintiff reported Mattacchione's behavior to HR on multiple occasions between June 2023 and October 2023.

44.    Despite Plaintiff's reports, Defendant took no subsequent remedial action to address the damage its employee was causing to Plaintiff.

45.    Defendant's disparate treatment of Plaintiff and termination of his employment was motivated by Plaintiff's race.

46.    As a proximate result of Defendant's unlawful, intentional discrimination, Plaintiff suffered financial and emotional harm.

### COUNT II – RACE DISCRIMINATION (42 U.S.C. §1981)

47.    Plaintiff is Black and he is, therefore, a member of a protected class.

48.    Plaintiff was employed by Defendant as a Phone Operator.

49. Plaintiff is qualified to do his job as a Phone Operator.

50. In the role of Phone Operator, Plaintiff's supervisor, Mattacchione, subjected Plaintiff to different standards and other racist comments that Caucasian employees were not subjected to.

51. Plaintiff was not permitted to use all of the functioning tools available to assist his job duties.

52. Mattacchione would call Plaintiff "killa," which is slang for a racial slur.

53. Mattacchione would wish Plaintiff "hood night" instead of "good night."

54. Plaintiff reported Mattacchione's behavior to HR on multiple occasions between June 2023 and October 2023.

55. Despite Plaintiff's reports, Defendant took no subsequent remedial action to address the damage its employee was causing to Plaintiff.

56. Defendant's disparate treatment of Plaintiff and termination of his employment occurred because of Plaintiff's race, and would not have occurred but for Plaintiff's race.

57. As a proximate result of Defendant's unlawful, intentional discrimination, Plaintiff suffered financial and emotional harm.

7

## COUNT III – HOSTILE WORK ENVIRONMENT
## BASED ON RACE AND SEX (TITLE VII)

58.    Plaintiff is Black and he is, therefore, a member of a protected class.

59.    Plaintiff was employed by Defendant as a Phone Operator.

60.    Plaintiff is qualified to do his job as a Phone Operator.

61.    In the role of Phone Operator, Plaintiff's supervisor, Mattacchione, subjected Plaintiff to different standards and other racist comments that Caucasian employees were not subjected to.

62.    Plaintiff was not permitted to use all of the functioning tools available to assist his job duties.

63.    Mattacchione would call Plaintiff "killa," which is slang for a racial slur.

64.    Mattacchione would wish Plaintiff "hood night" instead of "good night."

65.    Mattacchione made numerous sexual innuendoes, such as telling Plaintiff to "suck a bag of dicks."

66.    Mattacchione subjected Plaintiff to homosexual images and slurs via Microsoft Teams messages, including referring to Plaintiff as "Marvin G. Willis," with the letter G representing the word "gay."

8

67.     Plaintiff reported Mattacchione's behavior to HR on multiple occasions between June 2023 and October 2023.

68.     Despite Plaintiff's reports, Defendant took no subsequent remedial action to address the damage its employee was causing to Plaintiff.

69.     Defendant's disparate treatment of Plaintiff and termination of his employment was motivated by Plaintiff's race and sex.

70.     As a proximate result of Defendant's unlawful, intentional discrimination, Plaintiff suffered financial and emotional harm.

## **COUNT IV – RETALIATION (TITLE VII)**

71.     Plaintiff is Black and he is, therefore, a member of a protected class.

72.     Plaintiff was employed by Defendant as a Phone Operator.

73.     Plaintiff is qualified to do his job as a Phone Operator.

74.     In the role of Phone Operator, Plaintiff was subjected to discrimination and harassment from his supervisor, Mattacchione.

75.     Plaintiff reported Mattacchione's unlawful behavior to HR on multiple occasions between June 2023 and October 2023.

76.     Despite Plaintiff's reports, Defendant took no subsequent remedial action to address the damage its employee was causing to Plaintiff.

77.     Soon after Plaintiff began reporting the discrimination and harassment, Plaintiff started experiencing severe retaliation from his supervisor and coworkers.

78.    Mattacchione told Plaintiff's coworkers during a team meeting to be mindful of what they were sharing in Microsoft Teams chats because someone was "snitching."

79.    A group of around four (4) white men began threatening Plaintiff's life in Microsoft Teams chats, making it known that they knew Plaintiff had submitted a complaint.

80.    Plaintiff reported these death threats to HR and was mocked for his report.

81.    In October 2023, Plaintiff was moved from Mattacchione's team to Brewster's team.

82.    Plaintiff expressed his concerns with the reassignment to HR, as Mattacchione and Brewster were good friends, but HR disregarded these concerns.

83.    Shortly after Plaintiff's reassignment, he began experiencing retaliation from Brewster and her supervisor, McKowen.

84.    Brewster told Plaintiff that she had a process to "get the ball rolling" and that she had gotten a lot of employees terminated before.

85.    Brewster began falsifying Plaintiff's timesheets by reporting incorrect working hours.

86.    McKowen sent Plaintiff a harassing email that she claimed was on behalf of Mattacchione, who no longer worked for Defendant at the time the email was sent.

87.    Plaintiff reported this retaliation to HR on or around February 7, 2024.

88.    Plaintiff was terminated on or around March 20, 2024, only six (6) weeks after reporting retaliation to HR.

89.    Defendant's retaliatory treatment of Plaintiff and termination of his employment occurred because of Plaintiff's protected activity, and would not have occurred but for that protected activity.

90.    As a proximate result of Defendant's unlawful, intentional discrimination, Plaintiff suffered financial and emotional harm.

### COUNT V – RETALIATION (42 U.S.C. § 1981)

91.    Plaintiff is Black and he is, therefore, a member of a protected class.

92.    Plaintiff was employed by Defendant as a Phone Operator.

93.    Plaintiff is qualified to do his job as a Phone Operator.

94.    In the role of Phone Operator, Plaintiff was subjected to discrimination and harassment from his supervisor, Mattacchione.

95.    Plaintiff reported Mattacchione's unlawful behavior to HR on multiple occasions between June 2023 and October 2023.

11

96.   Despite Plaintiff's reports, Defendant took no subsequent remedial action to address the damage its employee was causing to Plaintiff.

97.   Soon after Plaintiff began reporting the discrimination and harassment, Plaintiff started experiencing severe retaliation from his supervisor and coworkers.

98.   Mattacchione told Plaintiff's coworkers during a team meeting to be mindful of what they were sharing in Microsoft Teams chats because someone was "snitching."

99.   A group of around four (4) white men began threatening Plaintiff's life in Microsoft Teams chats, making it known that they knew Plaintiff had submitted a complaint.

100.   Plaintiff reported these death threats to HR and was mocked for his report.

101.   In October 2023, Plaintiff was moved from Mattacchione's team to Brewster's team.

102.   Plaintiff expressed his concerns with the reassignment to HR, as Mattacchione and Brewster were good friends, but HR disregarded these concerns.

103.   Shortly after Plaintiff's reassignment, he began experiencing retaliation from Brewster and her supervisor, McKowen.

104.   Brewster told Plaintiff that she had a process to "get the ball rolling" and that she had gotten a lot of employees terminated before.

105. Brewster began falsifying Plaintiff's timesheets by reporting incorrect working hours.

106. McKowen sent Plaintiff a harassing email that she claimed was on behalf of Mattacchione, who no longer worked for Defendant at the time the email was sent.

107. Plaintiff reported this retaliation to HR on or around February 7, 2024.

108. Plaintiff was terminated on or around March 20, 2024, only six (6) weeks after reporting retaliation to HR.

109. Defendant's retaliatory treatment of Plaintiff and termination of his employment occurred because of Plaintiff's protected activity, and would not have occurred but for that protected activity.

110. As a proximate result of Defendant's unlawful, intentional discrimination, Plaintiff suffered financial and emotional harm.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A.    Back pay for lost income and any other compensatory damages;

B.    Reinstatement or front pay if the Court determines reinstatement is impractical;

C.    Liquidated damages equal to the amount of back pay;

D.  Punitive damages;

E.  A reasonable attorneys' fee;

F.  Plaintiff's costs and expenses;

G.  Interest on all monies owed; and

H.  Any and all other relief the Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted on this the 22nd day of April, 2026.

/s *Anthony D. Michel*
Anthony D. Michel (ASB-6809-O64M)
Hannah C. Dillashaw (ASB-2048-K17W)
*Attorneys for Plaintiff*

**Michel Allen & Sinor**
1900 International Park Drive, Suite 140
Birmingham, AL 35243
Telephone: (205) 980-5700
Facsimile:  (205) 994-2819
Anthony@mas-firm.com
Hannah@mas-firm.com

**DEFENDANT WILL BE SERVED VIA PROCESS SERVER AT THE FOLLOWING ADDRESS:**

American Tire Distributors, Inc.
12200 Herbert Wayne Ct #150
Huntersville, NC 28078

/s *Anthony D. Michel*
*Attorney for Plaintiff*

14